**Stephen J. Joncus**, OSB #013072
Email: stephen.joncus@klarquist.com
**N. Andrew Sfeir**, OSB #131787
Email: andy.sfeir@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300
Facsimile: 503-595-5301

*Attorneys for Plaintiff*
*CAROL WILSON FINE ARTS, INC.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CAROL WILSON FINE ARTS, INC.,** an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ZIFEN QIAN,** an individual,<br><br>Defendant. | Civil No.: 3:14-CV-00587-AA<br><br>**PLAINTIFF CAROL WILSON FINE ARTS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## Local Rule 7-1 Certification

On May 8, 2014, counsel for Plaintiff conferred with Mr. Zifen Qian telephonically, and the parties were unable to resolve this dispute.

## I. **INTRODUCTION**

Carol Wilson Fine Arts, Inc. ("Carol Wilson Fine Arts") employed Mr. Zifen Qian for over twenty-one years as a professional artist. Painting new works of art was the purpose of Mr. Qian's employment—he was employed to generate original art for use in Carol Wilson Fine Arts' products such as stationery and greeting cards.

Mr. Qian's original title was "Artist" and he was later promoted to "Senior Artist." Carol Wilson Fine Arts paid Mr. Qian an hourly wage. Mr. Qian recorded his arrival and departure from work on a time clock. Carol Wilson Fine Arts provided Mr. Qian with benefits such as health insurance, paid vacation, paid sick time, and retirement contributions. Carol Wilson Fine Arts withheld taxes from Mr. Qian's pay and provided him with an annual W-2 statement.

There is no genuine issue of material fact that Mr. Qian was employed by Carol Wilson Fine Arts for the purpose of creating art for Carol Wilson Fine Arts. The application of the law to this fact is straightforward. The artwork Mr. Qian created for Carol Wilson Fine Arts was "work made for hire" under the Copyright Act. Accordingly, Carol Wilson Fine Arts is entitled to summary judgment that it owns the copyrights in those works.

## II. **MOTION**

Carol Wilson Fine Arts, Inc. respectfully moves for summary judgment on Claim Two. (Dkt. 1 at 21.) That is, Carol Wilson Fine Arts seeks an order declaring that all works Mr. Qian created while being paid by Carol Wilson Fine Arts were made within the scope of Mr. Qian's employment and were works made for hire, and that Carol Wilson Fine Arts is the rightful copyright holder of all copyright rights in such works.

## III. KEY UNDISPUTABLE FACTS

Mr. Qian was employed by Carol Wilson Fine Arts for more than twenty-one years, was paid by the hour, received annual W-2 statements for tax purposes, and received employee benefits such as health insurance. (Spector Decl. ¶¶ 5, 8, 9.)

Mr. Qian's title during his twenty-one years of employment was "Artist" or "Senior Artist." (Spector Decl. ¶ 4); (*see also* Dkt. 7 ¶ 30).

During those twenty-one years, Mr. Qian worked under Carol Wilson Fine Arts' control and direction. (Dkt. 1-1, p.2); (Spector Decl. ¶ 6).

During those twenty-one years, Mr. Qian created many original pieces of art while being paid by Carol Wilson Fine Arts. (Spector Decl. ¶ 5.)

## IV. THE COPYRIGHTS IN WORKS CREATED BY ZIFEN QIAN DURING HIS 21 YEARS OF EMPLOYMENT ARE OWNED BY CAROL WILSON FINE ARTS

### A. The Copyrights In Art Created By An Employee Within The Scope Of Employment Is Owned By The Employer

The copyright in a "work made for hire" is owned by "the employer or other person for whom the work was prepared." 17 U.S.C. § 201(b). "Work made for hire" constitutes work "prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. In contrast, independent contractors own the copyright in the work that they produce, absent other agreements to the contrary.

The principles of the common law of agency are used to determine whether the work qualifies as "work made for hire." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 750-51 (1989) ("To determine whether a work is for hire under the Act, a court first should ascertain, using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor.") ("*CCNV*").

There is no genuine issue of material fact that Mr. Qian painted for Carol Wilson Fine Arts as an employee—and not an independent contractor. Most conclusively, Mr. Qian worked for Carol Wilson Fine Arts pursuant to an Employment Agreement. (Dkt. 1-1.)

**B.     Mr. Qian Was An Employee Under An Employment Agreement**

The Employment Agreement begins by defining Carol Wilson Fine Arts as "Employer," Mr. Qian as "Employee," and states that "Employer agrees to employ the Employee." (Dkt. 1-1, p.1.) Mr. Qian signed the Employment Agreement. (*Id.*, p.6.) Likewise, the Separation and Confidentiality Agreement defines Mr. Qian as "Employee." (Dkt. 1-2, p.1.) Mr. Qian signed the Separation and Confidentiality Agreement. (*Id.*, p.10.) Mr. Qian has admitted that the "Employment Agreement" and "Separation and Confidentiality Agreement" attached as Exhibits A and B to the Complaint (Dkt. 1-1, 1-2) are authentic. (Dkt. 7 ¶¶ 23, 63.)

Not only does the Employment Agreement define Mr. Qian as "Employee" and Carol Wilson Fine Arts as "Employer"—it defines Carol Wilson Fine Arts' control over Mr. Qian's work. It states: "The employee shall, at all times, provide services to Employer under Employer's <u>control and direction</u>," and "Employee expressly agrees to <u>follow all of Employer's instructions</u> in performing the work to be provided . . . ." (Dkt. 1-1, p.2) (emphases added). In short, Mr. Qian was employed at Carol Wilson Fine Arts' control and direction.

The Employment Agreement and the Separation and Confidentiality Agreement are definitive. Mr. Qian admits that they are authentic. Mr. Qian did his work for Carol Wilson Fine Arts as an employee, not an independent contractor. Assessing each of the detailed *CCNV* factors further confirms that Mr. Qian worked as an employee.

As stated in *CCNV*:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to

this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*CCNV,* 490 U.S. at 751-52 (footnotes omitted)

        **C.**        **The *CCNV* Factors Overwhelmingly Establish That Mr. Qian Was An Employee, Not An Independent Contractor**

        1.        <u>The hiring party's right to control the manner and means by which the product is accomplished</u>. This is the heart of the *CCNV* analysis. *Id.* at 751.

The Employment Agreement establishes that Carol Wilson Fine Arts had the right to control the manner and means for producing product. The agreement stated: "The employee shall, at all times, provide services to Employer under Employer's <u>control and direction</u>;" and "Employee agrees to <u>follow all of Employer's instructions</u> in performing the work to be provided." (Dkt. 1-1, p.2) (emphases added).

Email records provide examples of Carol Wilson Fine Arts' control of the manner and means of Mr. Qian's work in practice such as review and control of: what was painted;[1] when work was ready to proceed to the next step;[2] and how Mr. Qian painted.[3] Daily progress reports

---

[1] *E.g.*, Ex. 3 ("Please do a final version of B, including notecard and envelope, then do A. Please send me daily progress reports and show me pictures."); Ex. 4 ("Please do more advanced roughs on 13, 14, 15, and 17."); Ex. 8 ("I don't know what kind of format you finally will pick.").

[2] *E.g.*, Ex. 5 (Zifen Qian to Gary Spector: "Please let me know those you want to go ahead the next step").

[3] *E.g.*, Ex. 6 (Gary Spector to Zifen Qian: "Please send me the photo of the roses alongside this mockup so I can study them together as I asked you before."); Ex. 9 (Gary Spector to Zifen Qian: "The top flap art looks very nice, but the bottom looks too cluttered. . . ."); Ex. 11 (Gary Spector to Zifen Qian: "The petals need some light pure clean color. . . ."); Ex. 12 (Gary Spector to Zifen Qian: "WAY too much red in the shadows and overall. Please keep very light pink and minimal red.").

were required from each of the full-time artists employed by Carol Wilson Fine Arts.[4]

More generally, Carol Wilson Fine Arts had "Employee Rules" that applied to Mr. Qian. (*See* Ex. 1.) The rules specified such things as starting times, breaks, payroll time sheets, and maintaining a clean work space. Mr. Qian said that he understood and agreed to the "Employee Rules" by signing in the space for the "employee signature." (*Id*.)

Similarly, Mr. Qian also agreed to "follow all existing and future Company policies and rules" when he signed his acknowledgement of the "Employee Handbook." (*See* Ex. 2.)

This factor, which is the heart of the *CCNV* analysis, weighs heavily towards finding Mr. Qian an employee.

2. <u>The skill required</u>. An artist works in a skilled profession. Mr. Qian was employed for 21 years for the very reason that he was a skilled artist. (Spector Decl. ¶ 6.) Carol Wilson Fine Arts did not want Mr. Qian to work for its competitors. (Spector Decl. ¶ 6.)

Having a marketable skill may mean that a person is capable of being an independent contractor. But, Mr. Qian's skill was a reason why Carol Wilson Fine Arts wanted to retain his exclusive services as an employee. This factor is neutral.

3. <u>The source of the instrumentalities and tools</u>. The Employment Agreement specifically provided that Carol Wilson Fine Arts would "supply the Employee with all necessary materials with which Employer desires the Employee to work." (Dkt. 1-1, p.1.) Carol Wilson Fine Arts provided Mr. Qian with a computer, an office, a drafting table, props to paint, painting supplies, storage for his art, books and other reference materials for inspiration, and

---

[4] *See* Ex. 10 ("Some of you have not been sending your daily progress reports lately. Please remember that this is required every day."); Spector Decl. ¶ 20.

production equipment such as scanners for digitizing his work. (Spector Decl. ¶ 10.)[5] This factor weighs heavily towards finding Mr. Qian an employee.

4. <u>The location of the work</u>. Mr. Qian was provided an office at Carol Wilson Fine Arts' facility to do his work. He was not permitted to work from home. (Spector Decl. ¶ 7.) Mr. Qian recorded his time at work using the time clock provided for employees. (Spector Decl. ¶ 8.) This factor weighs heavily towards finding Mr. Qian an employee.

5. <u>The duration of the relationship between the parties</u>. Mr. Qian worked for Carol Wilson Fine Arts for over twenty-one years. (Spector Decl. ¶ 5); (*see also* Dkt. 7 ¶ 29). The period of Mr. Qian's employment is marked by the Employment Agreement (Dkt. 1-1), at the beginning, and the Separation and Confidentiality Agreement (Dkt. 1-2), at the end. The duration of the relationship was anything but fleeting, temporary, or for a particular piece of art. Mr. Qian was employed over a long period of time as a full-time professional artist to create art as directed by Carol Wilson Fine Arts. This factor weighs towards finding Mr. Qian an employee.

6. <u>The right to assign additional projects</u>. The Employment Agreement specifies that Mr. Qian was to provide services at Carol Wilson Fine Arts' direction. (Dkt. 1-1, p.2.) Carol Wilson Fine Arts provided that direction for twenty-one years. (Spector Decl. ¶¶ 5-6.) This factor weighs heavily towards finding Mr. Qian an employee.

7. <u>The hired party's discretion over when and how long to work</u>. Carol Wilson Fine Arts required Mr. Qian to keep regular hours on Carol Wilson Fine Arts' premises. (Spector Decl. ¶ 8.) Mr. Qian's hours were specified by Carol Wilson Fine Arts. (*Id*.); (*see also* Ex. 1) ("Starting time is 8:00 unless otherwise arranged"). Mr. Qian was required to seek permission

---

[5] For example, an email from Mr. Qian acknowledges new brushes supplied by Carol Wilson Fine Arts. (Ex. 7) ("Carol new bought brushes works fine").

for time off from work. (*Id.*); (*see also* Ex. 1 at 2) ("Vacations must be approved"). Mr. Qian was not permitted to work from home. (Spector Decl. ¶ 7.) This factor weighs heavily towards finding Mr. Qian an employee.

8. <u>The method of payment</u>: Carol Wilson Fine Arts paid Mr. Qian on an hourly basis. (Spector Decl. ¶ 8.)[6] Mr. Qian was required to record the time of his arrival and departure from work. (*E.g.*, Ex. 1) ("Payroll Time Sheets are to be filled in each morning when you arrive, when you break for lunch, when you return from lunch and when you leave for the day."). Payment on an hourly basis "<u>weighs heavily</u> in favor of finding him an employee . . . ." *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1127 (9th Cir. 2010) (emphasis added).

9. <u>Hiring and paying assistants</u>. Mr. Qian had no authority to hire or pay assistants. (Spector Decl. ¶ 7.) This factor weighs heavily towards finding Mr. Qian an employee.

10. <u>The regular business of the hiring party</u>. Carol Wilson Fine Arts' business was producing stationery, greeting cards, and other products featuring its original artwork. (Spector Decl. ¶ 2.)[7] (*See also*, Dkt. 7 ¶¶ 7 & 9) (stating that Carol Wilson Fine Arts "publishes different artists' paintings and illustrations on its greeting cards, stationeries and other paper products") (emphasis in original omitted). Mr. Qian created some of this artwork. (Spector Decl. ¶ 5.) This factor weighs towards finding Mr. Qian an employee.

11. <u>The hiring party is in business</u>. During the entire time that Mr. Qian was employed, Carol Wilson Fine Arts was in the business of selling greeting cards. (Dkt. 1-1); (Spector Decl. ¶ 2.) It's success depended on the attractive appearance of its products. Carol Wilson Fine Arts employed Mr. Qian and other artists as part of the process of creating attractive

---

[6] *See also* Dkt. 1-1, p.4 (Employment Agreement setting hourly wage); Dkt. 1-2, p.2 (Separation Agreement setting payout based on hourly base pay).
[7] *See also* Dkt 1-1, p.1 ("Employer is engaged in the business of creating, marketing and selling greeting cards, stationery and related products").

products.  (Spector Decl. ¶ 6.)  This factor weighs towards finding Mr. Qian an employee.

12.  <u>Employee benefits</u>.  Carol Wilson Fine Arts provided Mr. Qian with paid holidays, paid sick leave, paid vacations, and health insurance.  (Spector Decl. ¶ 9); (Ex. 1); (Ex. 14).  Carol Wilson Fine Arts even provided Mr. Qian with contributions to his retirement account.  (Spector Decl. ¶ 9.)   This factor weighs heavily towards finding Mr. Qian an employee.

13.  <u>Tax treatment</u>.  Carol Wilson Fine Arts withheld taxes from Mr. Qian's paychecks.  (Spector Decl. ¶ 8.)  Carol Wilson Fine Arts completed an I.R.S. Form W-2 for Mr. Qian every year that he was employed.  (*Id*.); (Ex. 13).  This factor weighs heavily towards finding Mr. Qian an employee.

The above *CCNV* factors confirm the conclusion that can be made from reading the written Employment Agreement.  Mr. Qian was Carol Wilson Fine Arts' employee.  He was employed as a professional artist for the purpose of creating original works of art to be used in Carol Wilson Fine Arts' products.  There is no evidence suggesting that Mr. Qian was an independent contractor.

**D.  <u>Summary Judgment Is Appropriate On These Facts</u>**

The Employment Agreement together with the *CCNV* factors present a far stronger case than other cases where courts have ruled that on summary judgment the work in question was "work made for hire."

In *JustMed, Inc. v. Byce*, the Ninth Circuit held that a technology start-up company owned the copyright in source code written by a computer programmer, because the programmer was an employee.  600 F.3d at 1131.  The programmer was not hired for a specific term or for a single product; he received a salary; and his coding work was integral to the company's business (producing a "digital audio larynx").  *Id.* at 1126-27.  These considerations were sufficient to

render the programmer an employee (and his work as work made for hire), despite other factors that weighed against employee status: he worked from home and in another state; he set his own hours and used his own computer equipment; he had no written employment agreement; he received no benefits; and for a time, taxes were not paid nor tax forms completed. *Id.* at 1127-28. By contrast, Mr. Qian was subject to a written Employment Agreement defining his status as an employee, and all the indicia of employment existed over 21 years. No factor weighs in favor of concluding that Mr. Qian was an independent contractor.

In *Carter v. Helmsley-Spear, Inc.*, the Second Circuit found the artists' sculpture, built for a commercial building's lobby, was a work made for hire. 71 F.3d 77, 88 (2d Cir. 1995). This was despite the fact that the artists "had complete artistic freedom," "controlled the work's 'manner and means'" of production, and exercised "great skill in execution." *Id.* at 86. Such factors were outweighed by facts indicating that they were employees: they performed other projects for the building management company; they received employee benefits and were treated as employees for tax purposes; they received a weekly salary; they "were provided with many (if not most) of [their] supplies" by the company; and they were hired for an aggregate term of over two years. *Id.* at 87. These artists were held to be employees despite their exercising a great deal more control over their work than Mr. Qian did. *See id*. at 86-87.

## V. CONCLUSION

There is no genuine issue of material fact that Mr. Qian was employed by Carol Wilson Fine Arts as a professional artist to paint original works of art. Not a shred of evidence suggests that Mr. Qian worked for Carol Wilson Fine Arts as an independent contractor. Accordingly, the Court should grant summary judgment that the body of work done by Mr. Qian during his 21 years of employment was "work made for hire" and the copyrights in those works are owned by Carol Wilson Fine Arts.

Respectfully submitted,

Dated: June 27, 2014      By:      /s/Stephen J. Joncus
**Stephen J. Joncus**, OSB #013072
Email: stephen.joncus@klarquist.com
**N. Andrew Sfeir** OSB #131787
Email: andy.sfeir@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300
Facsimile: 503-595-5301

*Attorneys for Plaintiff*
*CAROL WILSON FINE ARTS, INC.*