**Stephen J. Joncus**, OSB #013072
Email: stephen.joncus@klarquist.com
**N. Andrew Sfeir**, OSB #131787
Email: andy.sfeir@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300
Facsimile: 503-595-5301

*Attorneys for Plaintiff*
*CAROL WILSON FINE ARTS, INC.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CAROL WILSON FINE ARTS, INC.,** an Oregon corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**ZIFEN QIAN,** an individual,<br><br>　　　　　　　　　　　　Defendant. | Civil No.: 3:14-CV-00587-AA<br><br>**PLAINTIFF CAROL WILSON FINE ARTS, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.  **INTRODUCTION**

The copyright in a creative work made by an employee within the scope of his or her employment is owned by the employer.[1] That statutory rule is long-standing and uncontroversial.

In the context of this case, the copyright in each work of art created for Carol Wilson Fine Arts by its professional artist employees is owned by Carol Wilson Fine Arts.

Without any rational basis in law, Mr. Qian contends that this long-standing and uncontroversial rule does not apply to him. Mr. Qian's reliance on human rights principles, the First Amendment, and other irrelevant citations provide no support for Mr. Qian's position.

II. **ARGUMENT**

A.  **Mr. Qian's Art Was Within The Scope Of His Employment As An Artist**

Mr. Qian does not deny that he was employed by Carol Wilson Fine Arts. Mr. Qian does not offer any evidence that he was not employed as a professional artist with the title "Artist" or "Senior Artist."

Yet, Mr. Qian imagines that some work he did during work hours, while being paid an hourly wage, on Carol Wilson Fine Arts premises, working as an Artist, is not within the scope of what he was hired to do. There simply is no basis for Mr. Qian's belief.

Common law principles of agency apply. An employee's work is within the scope of employment if: "(a) it is of the kind the employee is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the employer."[2] The unrebutted evidence in the record shows that all of Mr. Qian's painting for Carol Wilson Fine Arts was within the scope of his employment.

---

[1] 17 U.S.C. § 201(b).
[2] *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012).

Mr. Qian was employed as a professional artist (with the title "Artist" or "Senior Artist") for the purpose of creating original paintings that could be used in Carol Wilson Fine Art's products.[3] Most of Mr. Qian's time working at Carol Wilson Fine Arts was spent preparing, drawing, and painting artwork for the company's original greeting cards, stationery, and other products.[4] In short—his job was to paint.[5] And it was Mr. Qian's full-time job—for 21 years.[6] He received benefits such as paid vacation and health insurance.[7] Carol Wilson Fine Arts paid Mr. Qian for everything he did for the company.[8] Therefore, all painting by Mr. Qian for Carol Wilson Fine Arts was "of the kind" of work Mr. Qian was employed to perform.[9]

Carol Wilson Fine Arts has many drawers filled with paintings painted by Mr. Qian during work hours, on Carol Wilson Fine Arts premises, while paid an hourly wage, over his 21 years of full-time employment.[10] Mr. Qian was provided an office in which to do his work.[11] Mr. Qian was required to maintain regular hours in the office.[12] He was not permitted to work

---

[3] *See* Plaintiff's Motion for Partial Summary Judgment (Dkt. 9) at page 3 and Gary Spector's Declaration (Dkt. 10) at ¶ 4 (Mr. Qian was employed with the title of "Artist" for the purpose of creating original paintings for Carol Wilson Fine Arts' Products). Plaintiff's Motion for Summary Judgment (Dkt. 9), Gary Spector's Declaration (Dkt. 10), the exhibits to Gary Spector's Declaration (Dkt. 10-1 through 10-14), and Plaintiff's Reply Brief (Dkt. 13) are incorporated by reference.
[4] Gary Spector's Second Declaration (Dkt. 17) at ¶ 7. Plaintiff's Motion for Partial Summary Judgment of Infringement (Dkt. 15), the Declaration of Stephen Joncus (Dkt. 16), and the Declaration of Gary Spector (Dkt. 17) are incorporated by reference.
[5] Dkt. 17 ¶ 7; Dkt. 10 ¶¶ 4-5.
[6] Dkt. 10 ¶ 5.
[7] Dkt. 10 ¶ 9.
[8] Dkt. 10 ¶ 8.
[9] *See U.S. Auto Parts*, 692 F.3d at 1015.
[10] *See* Dkt. 9, p. 3; Dkt. 10 ¶¶ 5, 7-9.
[11] Dkt. 10 ¶ 7.
[12] Dkt. 10 ¶ 8.

from home.[13] Therefore, Mr. Qian's work for Carol Wilson Fine Arts occurred "substantially within the authorized time and space limits."[14]

Mr. Qian worked under Carol Wilson Fine Arts' control and direction and in service to Carol Wilson Fine Arts.[15] The record contains a number of examples showing how Mr. Qian was directed what to paint and how to paint it.[16] He was paid for everything that he was told to do.[17] Therefore, his work was "actuated, at least in part, by a purpose to serve the employer."[18]

Mr. Qian's contract specifies that he was to follow his employer's directions.[19] It is undisputed that he was professionally employed as an Artist. The notion that any of the art painted by Mr. Qian, at work, while being employed by Carol Wilson Fine Arts as a full-time professional artist, was somehow outside the scope of his job is outrageous and without any support in fact or law.

B.     **Mr. Qian Contract Argument Has No Merit**

Mr. Qian imagines that the employment contract must state who owns the copyright in the artwork that he made for Carol Wilson Fine Arts. Mr. Qian is wrong. As previously explained by Carol Wilson Fine Arts, no contract is necessary for Mr. Qian's work to be "work made for hire."[20]

The only way to avoid the "work made for hire" rule is for Mr. Qian's contract to affirmatively state that Mr. Qian would own the artwork that he created during his

---

[13] Dkt. 10 ¶ 7.
[14] *See U.S. Auto Parts*, 692 F.3d at 1015.
[15] *See* Dkt. 9, p. 3; Dkt. 10 ¶ 6; Exhibits 3 – 12 to Gary Spector's Declaration (Dkt. 10-3 through 10-12); and Mr. Qian's Employment Agreement (Dkt. 1-1) at ¶ 3.A. Mr. Qian's Employment Agreement (Dkt. 1-1) is incorporated by reference.
[16] *See* Dkt 10-3 through 10-12.
[17] Dkt. 10 ¶ 8.
[18] *See U.S. Auto Parts*, 692 F.3d at 1015.
[19] Dkt. 1-1 ¶¶ 2-3.
[20] *See* Dkt. 13, pp. 4-5.

employment.[21] Carol Wilson Fine Arts' employment agreement with Mr. Qian[22] is silent on who would own the copyright in Mr. Qian's work. That silence is fatal to Mr. Qian's case. There is no writing that overcomes the statutory rule that the employer owns "work made for hire."[23] Carol Wilson Fine Arts is the owner and author of Mr. Qian's work under the "work made for hire" provision of the Copyright statute.

Mr. Qian contends that the employment agreement does not specify his job duties. To the contrary, the employment agreement specifies that Mr. Qian "shall, at all times, provide services to Employer under Employer's control and direction." More importantly, the employment need not specifically define Mr. Qian's job duties for that work to be "work made for hire."[24]

The unrebutted evidence in the record is that Mr. Qian was a professional artist hired for the purpose of painting original works of art. Under the facts of this case, all of Mr. Qian's work for Carol Wilson Fine Arts was "work made for hire." The terms (or lack of terms) in the employment agreement do not support Mr. Qian's position in any way.

Mr. Qian's arguments ignore and contradict the plain language of the "work made for hire" provision of the Copyright statute.

### C. Teacher Exception Does Not Apply To Mr. Qian

Mr. Qian cites to §5.03[B][1][b][i] of Nimmer on Copyright that describes the "teacher exception" to the "work made for hire" rule. The "teacher exception" predates the 1976

---

[21] 17 U.S.C. § 201(b) (the employer owns the copyright "unless the parties have expressly agree otherwise in a written instrument").
[22] Dkt. 1-1.
[23] 17 U.S.C. § 201(b).
[24] *Id*.

Copyright Act.[25] It is questionable whether this common law exception is still good law in view of the 1976 Copyright Act.[26]

In any event, the "teacher exception" does not apply to Mr. Qian—he was not hired by Carol Wilson Fine Arts as a teacher. He was hired as a professional artist.

Nor does the policy reason behind the "teacher exception" extend to Mr. Qian's situation. Teachers prepare lectures and lecture notes. The policy behind the "teacher exception" is to permit teachers to change jobs and keep their lecture notes—if a university owned the lectures as "work made for hire," then teachers would be impeded from moving from campus to campus by the necessity of preparing entirely new lectures.[27]

This policy rationale does not apply to Mr. Qian's situation. Carol Wilson Fine Arts does not claim ownership in any lecture notes—no such notes exist—because Mr. Qian was not hired to be a teacher. Carol Wilson Fine Arts owns the copyright in the particular paintings made for Carol Wilson Fine Arts by Mr. Qian during his employment. Mr. Qian's reliance on the teacher exception is without merit.

### D. Mr. Qian's Signature Makes No Difference

Some of the paintings used in products by Carol Wilson Fine Arts were signed by Mr. Qian and some of Carol Wilson Fine Arts' products gave credit to Mr. Qian for the painting. But, these facts are completely irrelevant to the question of copyright ownership. No element of the test for "work made for hire" asks whether the artist signed or was given credit for the

---

[25] 1 Melvin B. Nimmer and David Nimmer, Nimmer on Copyright § 5.03[B][1][b][i] (Mathew Bender, Rev. Ed.) (the "teacher exception" originates in a 1929 opinion from the Supreme Court for the District of Columbia).
[26] *Id*.
[27] *Id*.

work.[28]

Giving credit to a person who created the work does not provide any indication of copyright ownership. For instance, the names of actors and screenwriters appear prominently in the credits and advertisements for movies. Such an acknowledgement of a contribution of the people that contributed to the work provides no indication of copyright ownership. The same is true for Carol Wilson Fine Arts' acknowledgment of a contribution by Mr. Qian.

Moreover, someone viewing these acknowledgements of Mr. Qian would not believe he was the copyright owner because Carol Wilson Fine Arts' notice that it is the copyright owner is prominently displayed.[29]

Mr. Qian speculates that Carol Wilson Fine Arts knew that he should have been paid more if the contract included the copyrights in work that he painted. Mr. Qian's speculation is not evidence. Moreover, it is not true. Carol Wilson Fine Arts always knew that it owned the rights to all of the work that Mr. Qian did for the company[30] and it prominently displayed its copyright notice on its products. Again, Mr. Qian has already been appropriately compensated as an employee for everything that he did for the company for 21 years.[31] He is certainly not entitled to be paid anyting more than that.

Mr. Qian illogically cites to the Voting Rights Act, the Uniform Commercial Code, the First Amendment to the Constitution, and human rights principles. These have nothing to do with the legal issue of whether Mr. Qian's work for Carol Wilson Fine Arts was "work made for hire" under 17 U.S.C. § 201(b).

---

[28] *See Committee for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (hereinafter "*CCNV*"); *U.S. Auto Parts*, 692 F.3d at 1015.
[29] *See*, *e.g.*, Dkt. 17-1, pg. 5 ("© Carol Wilson Fine Arts, Inc.").
[30] Dkt. 17 ¶ 8.
[31] Dkt. 10 ¶8.

### E. Other Contracts Have No Bearing On Mr. Qian's Work For Hire

Carol Wilson Fine Arts employed artists; and it hired other artists as independent contractors. Mr. Qian was an employee—not an independent contractor.[32] The fact that Carol Wilson Fine Arts also worked with independent contractors is irrelevant to Mr. Qian's status as an employee whose work for Carol Wilson Fine Arts was "work made for hire."

Mr. Qian appears to assert that his relationship to the publishers of "Entertaining Betsy Bloomingdale" was as an independent contractor. Even if that is so, that contract is irrelevant to Mr. Qian's status as an employee of Carol Wilson Fine Arts.

### F. Personal Style Is Irrelevant

Mr. Qian claims that his work cannot be "work made for hire" because the work required application of his personal aesthetics (what Mr. Qian calls his "style, philosophy, spirit, emotion and personality"). But, of course, Mr. Qian was hired for the very purpose of creating aesthetically attractive paintings. That's the very nature of what it means to be an artist.[33] It has no bearing on the "work made for hire" test—none of the factors consider an artist's personal aesthetics.[34] Mr. Qian's point is completely irrelevant to the question of whether the paintings he created for Carol Wilson Fine Arts were "work made for hire."

### G. Mr. Qian Has No Claims Against Carol Wilson Fine Arts

In his prayer, Mr. Qian asks for: (1) Carol Wilson Fine Arts to withdraw its copyright registrations; (2) an award of $1,000,000; (3) compensation; (4) attorneys' fees; and (5) a declaration that his work for Carol Wilson Fine Arts are not made for hire.

---

[32] Dkt. 9.

[33] "Artist" is defined as "a person who produces works in any of the arts that are primarily subject to aesthetic criteria." Dictionary.com, http://dictionary.reference.com/browse/artist?s=t (last visited Sept. 2, 2014).

[34] *See CCNV*, 490 U.S. at 751-52; *U.S. Auto Parts*, 692 F.3d at 1015.

There is no conceivable justification for any claim by Mr. Qian. Under the black letter law, Carol Wilson Fine Arts owns the work Mr. Qian created as an employee.

Mr. Qian has asserted no causes of action against Carol Wilson Fine Arts.[35] He has not, and can not, identify any plausible legal basis for asking for damages or an injunction.

Moreover, Mr. Qian waived all claims against Carol Wilson Fine Arts and released Carol Wilson Fine Arts from any liability when he signed his Separation Agreement with Carol Wilson Fine Arts.[36]

Mr. Qian is not entitled to attorney fees because he has no attorney.[37]

Mr. Qian has provided no legal or factual support for the relief he requests.

### III. CONCLUSION

Mr. Qian completely misunderstands the law. His positions fly in the face of the undeniable language of the statute and the cases that have applied it. The Court should deny Mr. Qian's motion.

Respectfully submitted,

Dated: September 2, 2014   By: /s/Stephen J. Joncus
**Stephen J. Joncus**, OSB #013072
Email: stephen.joncus@klarquist.com
**N. Andrew Sfeir** OSB #131787
Email: andy.sfeir@klarquist.com
KLARQUIST SPARKMAN, LLP

---

[35] *See* Mr. Qian's Answer, Dkt. 7.
[36] Dkt. 1-2, Separation and Confidentiality Agreement and Release in Full of All Claims at ¶ 10. Mr. Qian admitted that Dkt 1-2 was authentic in his Answer, Dkt. 7 at ¶ 63. Dkt. 1-2 is incorporated by reference.
[37] *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991); *Elwood v. Drescher*, 456 F.3d 943, 947 (9th Cir. 2006) ("*Kay* imposes a general rule that pro se litigants, attorneys or not, cannot recover statutory attorneys' fees.").

121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

*Attorneys for Plaintiff*
*CAROL WILSON FINE ARTS, INC.*

.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 2, 2014, a true copy of the foregoing

**PLAINTIFF CAROL WILSON FINE ARTS, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** was served by U.S. Mail and email to:

ZIFEN QIAN
2811 Beacon Hill Drive
West Linn, Oregon 97068-3648
zifen@live.com

*Defendant*

           **By:**    /s/Stephen J. Joncus
                   **Stephen J. Joncus**, OSB #013072
                   Email:  stephen.joncus@klarquist.com
                   KLARQUIST SPARKMAN, LLP
                   121 S.W. Salmon Street, Suite 1600
                   Portland, Oregon  97204
                   Telephone:  503-595-5300
                   Facsimile:  503-595-5301