IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL WILSON FINE ARTS, INC.,                Case No. 3:14-cv-00587-AA
an Oregon corporation,                           OPINION AND ORDER

       Plaintiff,

   v.

ZIFEN QIAN, an individual,

       Defendant.

_____

Stephen J. Joncus
Norman A. Sfeir
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
     Attorneys for plaintiff

Zifen Qian
2811 Beacon Hill Drive
West Linn, Oregon 97068
   Pro se defendant


Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Carol Wilson Fine Arts, Inc. filed two partial motions for summary judgment, the first pertaining to its declaratory judgment claim and the second relating to its copyright infringement claim, pursuant to Fed. R. Civ. R. 56(a). Defendant Zifen Qian cross-moved for summary judgment. For the reasons set forth below, plaintiff's first motion is granted and the parties' remaining motions are denied.

## BACKGROUND

Plaintiff is an Oregon corporation in the business of designing, marketing, and selling stationary and greeting cards that incorporate original paintings and illustrations created by its in-house artists or independent contractors. In 1992, plaintiff hired defendant and the parties entered into a written employment agreement. Defendant's initial job title was "Artist," although he was later promoted to "Senior Artist." In September 2013, plaintiff terminated defendant's employment, at which time the parties executed a severance agreement.

During the course of his 21 years of employment, defendant created numerous original artworks that were utilized in plaintiff's products. The designs at issue in the case at bar consist of 21 different floral watercolor paintings ("Works"), sixteen of which are registered to plaintiff with the United States

Copyright office.[1] After his employment ceased, defendant began displaying the Works on his personal website.

Plaintiff became aware of defendant's actions in January 2014. In February 2014, plaintiff's counsel sent defendant a cease-and-desist letter, expressing a desire to resolve this dispute amicably. Defendant responded immediately, refusing to remove images of the Works from his website. In March 2014, plaintiff sent defendant another letter, providing additional authorities and again requesting that defendant stop engaging in any conduct that infringed on plaintiff's copyrights. Later that month, defendant notified plaintiff that he owned rights to the Works and therefore did have to curtail his usage now or in the future.

On April 9, 2014, plaintiff filed a complaint in this Court, alleging claims for declaratory judgment and copyright infringement. As relief, plaintiff seeks a declaration that the Works were "made for hire" under the Copyright Act, a Court order permanently enjoining future infringement and requiring the return of any original Works in defendant's possession, statutory damages in the minimum amount of $750 per copyrighted work, and impoundment of the infringing copies. On June 27, 2014, plaintiff moved for summary judgment on its declaratory judgment claim.[2] On August 7,

_____

[1] The five uncopyrighted Works "were not used in products, and therefore were not registered." First Spector Decl. ¶ 6.

[2] On July 21, 2014, defendant filed a surreply to plaintiff's first partial motion for summary judgment without

Page 3 - OPINION AND ORDER

2014, plaintiff moved for summary judgment as to its copyright infringement claim. That same day, defendant filed a motion for summary judgment on the basis that he owns copyrights in the disputed Works. Accordingly, defendant requests a Court order indicating that he "owns copyrights of all such paintings" and requiring plaintiff to "withdraw immediately its unlawful registrations of copyrights," as well as "[a]n award of One Million Dollars ($1,000,000)." Def.'s Cross-Mot. Summ. J. 6-7.[3]

On September 24, 2014, the parties tried unsuccessfully, via judicial settlement, to resolve their dispute. On September 26, 2014, defendant filed a supplemental brief, without leave from the Court, in which he reiterated his previous arguments and requested an additional $5,000,000 in damages as "unpaid compensation from the sales of [his] paintings published on [plaintiff's] greeting cards and other paper publications during the 21 years." Def.'s Supplemental Br. 2.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if

---

obtaining leave from the Court. Ordinarily, the Court would disregard this document. See LR 7-1(e)(3). Nevertheless, in order to provide the most complete review of this dispute, and in light of his pro se status, the Court considers defendant's surreply, especially because it does not alter the outcome of this case.

[3] Defendant did not numeralize his motion or briefs, such that the Court refers to the page numbers assigned in the docket when citing thereto.

Page 4 - OPINION AND ORDER

any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Plaintiff argues that summary judgment is warranted because defendant created the Works as an employee and within the scope of his employment, and then publicly displayed them via his personal

Page 5 - OPINION AND ORDER

website. Conversely, defendant maintains that he owns the exclusive copyrights to the Works because: (1) "[p]ainting was not part of job duty in the written employment agreement"; and (2) his "original paintings during the 21 years [of employment with plaintiff] were independently created without any other person's control and direction because those are representations of his own style, philosophy, spirit, emotion and philosophy," as evidenced by his "name and signature being published on [plaintiff's] greeting cards and other publications." Def.'s Cross-Mot. Summ. J. 1-3.

I.  Declaratory Judgement Claim

Plaintiff's seeks a declaration that it is the sole owner of any copyrights to the Works. See 28 U.S.C. §§ 2201, 2202. Under the Copyright Act, "copyright ownership vests initially in the author or authors of the work, which is generally the creator of the copyrighted work." U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1015 (9th Cir. 2012) (citation and internal quotations omitted). An "important exception" exists, however, "for works made for hire." Id. (citation and internal quotations omitted). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). "Work made for hire" is defined, in relevant part, as "a work prepared by an

employee within the scope of his or her employment." 17 U.S.C. §
101. "The creator of a work made for hire does not have a legal or
beneficial interest in the copyright and therefore does not have
standing to sue for infringement." Mostowfi v. i2 Telecom Int'l,
Inc., 269 Fed.Appx. 621, 623 (9th Cir. 2008) (citing Warren v. Fox
Family Worldwide, Inc., 328 F.3d 1136, 1142-43 (9th Cir. 2003)).

Generally, "'when one person engages another . . . to produce
a work of an artistic nature, [and] in the absence of an express
contractual reservation of the copyright in the artist, the
presumption arises that the mutual intent of the parties is that
the title to the copyright shall be in the person at whose instance
and expense the work is done.'" Twentieth Century Fox Film Corp. v.
Entm't Distrib., 429 F.3d 869, 877 (9th Cir. 2005), cert. denied,
548 U.S. 919 (2006) (quoting Lin-Brook Builders Hardware v.
Gertler, 352 F.2d 298, 300 (9th Cir. 1965)). As such, in the
absence of an agreement to the contrary, an employee's conduct
falls within the scope of employment if: "'(a) it is of the kind he
is employed to perform; (b) it occurs substantially within the
authorized time and space limits; [and] (c) it is actuated, at
least in part, by a purpose to serve the [employer].'" U.S. Auto
Parts, 692 F.3d at 1015 (quoting Restatement (Second) of Agency §
228)); see also Cmty. for Creative Non-Violence v. Reid, 490 U.S.
730, 751-52 (1989).

Concerning the first prong, despite his allegations to the

Page 7 - OPINION AND ORDER

contrary, the uncontroverted evidence of record demonstrates that defendant was employed to create original artwork for use in plaintiff's greeting cards and stationary. Notably, both the employment and severance agreement define plaintiff as the "Employer" and defendant as the "Employee." Compl. Ex. A, at 1; Compl. Ex. B, at 1; see also First Spector Decl. ¶¶ 3, 5, 8. Although the parties' employment contract does not define defendant's job title or specific duties, it does stipulate that "[t]he Employee agrees to perform the work desired by Employer in a workmanlike manner" and "shall, at all times, provide services to Employer under Employer's control and direction." Compl. Ex. A, at 1-2. Further, defendant recognizes he was paid an hourly wage to create original artwork for plaintiff's products and that his job title was "Artist" or "Senior Artist." First Spector Decl. ¶ 4; Second Spector Decl. ¶ 7; Answer ¶ 31; see also Def.'s Resp. to First Partial Mot. Summ. J. 2-3. As such, Gary Spector, plaintiff's President and Co-Founder, testified that defendant was "employed by [plaintiff] as a professional artist for the purpose of creating original paintings that could be used in [plaintiff's] products."[4] First Spector Decl. ¶¶ 1, 4; Second Spector Decl. ¶¶ 4, 7; see also

---

[4] Under these circumstances, the fact that some of the Works were signed by defendant is immaterial. The "made for hire" exception does not hinge on whether the artist signed or was given credit for the work, especially where, as here, the owner of the copyright prominently displays its copyright notice alongside the artist's signature on the product. See Second Spector Decl. Exs. 1-16.

Page 8 - OPINION AND ORDER

First Spector Decl. Exs. 3-12.

Turning to the second prong, defendant created the Works within the authorized time and space limits of his employment with plaintiff. The employment agreement states that "Employer agrees to supply the Employee with all necessary material with which the Employer desires the Employee to work." Compl. Ex. A, at 1. Accordingly, plaintiff supplied defendant with an on-site office, which contained a computer, a desk, and a drafting table; "tools enabling him to do his work" such as "brushes, paint, and art paper"; and other incidental materials, including art flat files and other storage, color corrected lighting, bookshelves, props, "reference materials and books to inspire new ideas," and production equipment. First Spector Decl. ¶¶ 7, 10. Defendant was "not permitted to work for [plaintiff] from home" and "required to maintain regular hours in the office that matched the company's business hours." Id. at ¶¶ 7-8; see also First Spector Decl. Exs. 1-2. In exchange, defendant received an hourly rate for his services, occasional yearly bonuses and retirement contributions, health insurance benefits, and paid vacation and sick leave. First Spector Decl. ¶¶ 8-9; see also First Spector Decl. Exs. 1-2, 14; Compl. Ex. A, at 4.

Finally, regarding the third prong, defendant's creation of the Works was actuated by a purpose to serve plaintiff's business of generating aesthetically-pleasing paper products featuring

original artwork. In fact, that was the primary purpose of defendant's employment with plaintiff. See First Spector Decl. ¶ 4; Second Spector Decl. ¶¶ 4, 7. As a result, plaintiff had "control and direction" over defendant's designs and artistic creations. First Spector Decl. ¶¶ 5-8; Compl. Ex. A., at 1. Significantly, defendant's supervisors "were active in reviewing and managing [his] work so that the original art he created could be used in [plaintiff's] products." First Spector Decl. ¶ 6; First Spector Decl. Exs. 3-12. For instance, when asked by Spector for a "mockup" of a painting of roses, defendant replied "[h]ere is the side by side . . . I am painting the detailed one now, but if you want to change something, I have to start over." First Spector Decl. Ex. 6.

Thus, no genuine issue of material fact exists as to whether the Works were "made for hire" within the meaning of the Copyright Act. Although defendant makes conclusory statements regarding his ownership of the Works or the types of tasks he was employed to perform, he failed to provide any evidence or cite to any precedent in support of these assertions and the parties did not execute a written agreement governing these matters. See generally Def.'s Resp. to First Partial Mot. Summ. J.; Def.'s Surreply to First Partial Mot. Summ. J.; Def.'s Resp. to Second Partial Mot. Summ. J.; Def.'s Cross-Mot. Summ. J.; Def.'s Reply to Cross-Mot. Summ. J.; see also Van Dyke v. Lions Gate Entm't, Inc., 2013 WL 3878974m *3 (C.D.Cal. July 24, 2013) ("if Van Dyke were an employee at the

time the Film was made, then absent an agreement to the contrary, his employer would be the owner of the copyright in the Film"); Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment") (citation omitted).

In sum, the undisputed record establishes plaintiff owns copyrights in the Works because they were created by defendant during work hours, on plaintiff's premises and at its expense, under plaintiff's direction and control, and while being paid an hourly wage. Plaintiff's motion is granted and defendant's motion is denied as to this claim.

## II. Copyright Infringement Claim

A prima facie case of copyright infringement consists of two elements: "(1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's work." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2001) (citations omitted). It is well-established that a certificate of copyright registration made within five years of publication entitles its holder to a presumption of valid copyright ownership. See 17 U.S.C. § 410 (c); Micro Star v. Formgen, Inc., 154 F.3d 1107, 1109-10 (9th Cir. 1998).

As discussed in section I, plaintiff is the owner of

copyrights to the Works. This conclusion is further bolstered by the fact that plaintiff registered sixteen of the Works with the United States Copyright office within the requisite time frame. See Second Spector Decl. ¶¶ 2, 5, 11-26; see also Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g, 747 F.3d 673, 685 (9th Cir. 2014). Significantly, all sixteen registrations reflect that the Works were "made for hire." Second Spector Decl. Exs. 1-16.

Nonetheless, the Court finds the record insufficient to make a summary judgment determination regarding plaintiff's copyright infringement claim. It is undisputed that defendant posted the Works on his website. Defendant, however, is not selling the Works over the internet or making them available for commercial purposes. Rather, defendant's arguments, as well as the content of his webpage, indicate that he is displaying non-scale images of the Works as part of his artist's portfolio or for academic purposes. See, e.g., Def.'s Cross-Mot. Summ. J. 6; see also Second Spector Decl. Ex. 17. Plaintiff has not cited to, and the Court is not aware of, any authority from within the Ninth Circuit establishing that displaying images in this manner violates the copyright owner's exclusive rights under the Copyright Act. See Pl.'s Mem. in Supp. of Second Partial Mot. Summ. J. 5 (citing Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 55 (1st Cir. 2012)). In fact, although the parties' motions and briefs are silent concerning whether defendant's conduct constitutes fair use,

the Copyright Act contemplates that, in certain limited circumstances, a registered work may be used publicly by a non-owner without infringement.[5] See 17 U.S.C. § 107; see also Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) ("[t]he fair use doctrine thus permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster") (citation and internal quotations and brackets omitted).

Essentially, granting defendant's motion would preclude artists, even those producing work made for hire, from representing themselves as the creator of such work, even in a non-commercial or academic context. The Court is troubled by the implications of such a decision, especially given the potentially far-reaching consequences, the significance of the relief requested, the nature of defendant's utilization of the Works, and the fact that he is not represented by counsel, without further argument and evidence from the parties. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) ("[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants . . . [t]his rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or

---

[5] The Court is mindful of the fact that the defendant bears the burden of proof in regard to the fair use doctrine, but only after the plaintiff has met its initial burden of establishing a prima facie case of copyright infringement. Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158-59 (9th Cir. 2007).

inaccurate legal terminology or muddled draftsmanship against them") (citations omitted). Accordingly, the parties' motions are denied as to plaintiff's copyright infringement claim.

## CONCLUSION

Plaintiff's first motion for summary judgment regarding its declaratory judgment claim (doc. 9) is GRANTED. Plaintiff's second motion for summary judgment concerning its copyright infringement claim (doc. 15) is DENIED. Defendant's cross-motion for summary judgment (doc. 18) is also DENIED. Plaintiff's requests for oral argument are DENIED as unnecessary. The Court orders the parties to renew their settlement negotiations with a United States Magistrate or District Court Judge. Within 60 days of the date of this opinion, the parties must provide a joint status report regarding their settlement efforts. If necessary, the Court will then set a status conference to discuss further management of this case.

IT IS SO ORDERED.

Dated this 3RD day of December November 2014.

_____
Ann Aiken
United States District Judge